**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Joy T. Darden,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Apollo Group, Inc.; University of Phoenix Online; Heather Phillips, individually and in her capacity as a manager,<br><br>　　　　Defendants. | No. CIV 05-264-PHX-EHC<br><br>**ORDER** |

Pending before the Court are Plaintiff's Motion to Appoint Counsel [dkt. 9] and Plaintiff's Motion for Extension of Time [dkt. 8]. Defendants filed a Response [dkt. 10] to the Motion for Extension of Time.

Pending before the Court are Defendants' Motion to Dismiss [dkt. 6] and Defendants' Request for Summary Disposition [dkt. 7] of its Motion to Dismiss. Plaintiff has not filed a Response to either of these Motions.

**Allegations in the Complaint**

Plaintiff is an African-American female over 40 years old. In November 1999, Plaintiff began working for the Defendant University of Phoenix Online[1] as an online academic

---

[1] Defendant University of Phoenix Online is owned and operated by Defendant Apollo Group, Inc. They will be referred to as the University.

1  counselor. In August 2000, Plaintiff was promoted to lead academic counselor. From 2000
2  to 2002, she received awards for Outstanding Customer Service and Superior Performance.
3  From 2003 to 2004, Plaintiff was harassed by white managers, who subjected her to
4  harsher discipline and more frequent reprimands for performance and attendance than
5  white employees engaging in the same conduct. During 2003, Plaintiff experienced
6  harassing and differential treatment related to her leave for a work-related injury. In
7  September 2003, Plaintiff was subjected to monitoring of her telephone calls and frequent
8  individual meetings with her manager. Further, Plaintiff was not allowed to perform her
9  duties as lead counselor, those duties being given to a newly hired employee.
10  On October 8, 2003, Plaintiff filed a charge with the Equal Employment Opportunity
11  Commission (EEOC) based on her former manager's allegedly harassing conduct. Although
12  the EEOC issued a right to sue letter, Plaintiff did not file suit before the expiration of the
13  90-day period.
14  In February of 2004, Plaintiff was assigned a new manager, who harassed Plaintiff.
15  On June 24, 2004, the University announced it was seeking an Academic Trainer in
16  the Student Services Department. On June 25, 2004, Plaintiff submitted an application for
17  this position to Defendant Heather Phillips, an Employee Development Manager with the
18  University. The University interviewed 22 applications for the position. See Defendants'
19  Motion to Dismiss. [Dkt. 6, p. 2].
20  On July 8, 2004, Plaintiff was interviewed by Defendant Phillips and Jessica
21  Wilhelmsen, an Academic Trainer with the University. Plaintiff alleges that the interview
22  was not conducted in a professional manner because "Defendant Phillips did not use an
23  interview questionnaire and asked questions examining Plaintiff's personality as opposed
24  to questions examining her work experience." [Dkt. 1, ¶ 29]. Those questions included
25  "'What three words would describe how others see you?,'" "'How do you feel about peer
26  reviews?,'" "'When training, what would you do to keep the new employees involved in
27
28

- 2 -

1
2
activities?'" and "'How would you interact or how would you react if they appear overwhelmed?.'" [Dkt. 1, ¶ 30].

3
4
5
6
7
8
9
10
On July 9, 2004, Plaintiff was notified that she was not chosen for a second interview. She requested an explanation. On July 27, 2004, Defendant Phillips responded that Plaintiff had not been chosen for a second interview because she was not the right fit for the position, for which Defendants sought a person skilled in "interaction with the new counselors in training." [Dkt. 1, ¶ 36]. Defendant Phillips also advised that Plaintiff was better suited for "an advanced level or continuous education trainer position." [Dkt. 1, ¶ 35]. A "white, young female" was selected for the position of academic trainer. [Dkt. 1, ¶ 37].

11
12
13
14
15
Plaintiff alleges that the University "intentionally promotes white employees between [the] approximate ages of 23 and 32 to management and trainer positions." [Dkt. 1, ¶ 7]. Plaintiff further alleges that she was the only African-American among the 12 academic counselors employed by the University. Plaintiff alleges that two African-American employees have been promoted during her tenure with the University.

16
17
18
19
20
21
On July 28, 2004, Plaintiff filed an EEOC charge of discrimination on the basis of race and age. On October 26, 2004, the EEOC dismissed the charge, issuing Plaintiff a right to sue letter. On January 24, 2005, Plaintiff filed a Complaint, alleging three counts: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1974, 42 U.S.C. §§ 2000e et seq.; (2) violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.; and (3) intentional infliction of emotional distress.

22 **Discussion**

23     **A.    Motion to Appoint Counsel**

24
25
26
27
On July 26, 2005, Plaintiff filed a Motion to Appoint Counsel. [Dkt. 9]. Under Title VII, the Court may appoint counsel "in such circumstances as the court may deem just." 42 U.S.C. § 2000e-5(f)(1)(B). In the Title VII context, courts look primarily at three factors in determining whether to appoint counsel: "(1) the plaintiff's financial resources; (2) the

28

1  efforts made by the plaintiff to secure counsel on his or her own; and (3) the merit of the
2  plaintiff's claim." <u>Johnson v. United States Treasury Dept.</u>, 27 F.3d 415, 416-17 (9th Cir.
3  1994) (internal quotation omitted).

4  Plaintiff's only stated financial resource is her disability income. [Dkt. 9, p. 3].
5  Plaintiff alleges that she has contacted at least six law offices: two declined representation,
6  two required a retainer she could not provide, and two charged a consultation fee Plaintiff
7  could not afford. [Dkt. 9, pp. 2-3].

8  When evaluating the merits of a Title VII claim for purposes of deciding a motion
9  to appoint counsel, "the court need normally look only to a determination by an
10 administrative agency, the EEOC." <u>Bradshaw v. Zoological Soc. of San Diego</u>, 662 F.2d
11 1301, 1309 (9th Cir. 1981) (improper to deny appointment of counsel on ground that if the
12 plaintiff's case had merit an attorney would accept representation).

13 Here, the EEOC has not made a determination as to the merits of Plaintiff's claim. In
14 a letter advising Plaintiff of the dismissal of her charge, the EEOC advised that "[t]his
15 dismissal is not a statement on the merits of your case." [Dkt. 1, attach.]. The EEOC did not
16 dismiss for lack of reasonable cause, but because it found that "the information in the file
17 does not indicate that any further investigation of your case would <u>necessarily</u> result in
18 any finding of discrimination." [Dkt. 1, attach. (emphasis added)].[2]

19 Because the EEOC did not address whether there is reasonable cause to believe the
20 claim has merit, the Court will examine whether Plaintiff's Title VII claim has merit.

---

[2] The EEOC's Dismissal and Notice of Rights is similarly inconclusive. It gave the reason for dismissing Plaintiff's charge by checking a box next to the following statement:
> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[Dkt. 1, attach.]. The EEOC did not check the box next to the statement: "The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." [Dkt. 1, attach.].

1    Plaintiff alleges that (1) she was not promoted despite her qualifications for the
2 position; (2) "no person of color over the age of 33 has ever been hired or promoted to an
3 academic trainer position at the University" [Dkt. 9, ¶ 4]; and (3) "only 'two' persons of
4 color under the age of 33 were ever promoted to counseling services management
5 positions at the University" [Dkt. 9, aff., ¶ 5]. If proven, these allegations arguably state a
6 prima facie case of employment discrimination. See Texas Dep't of Cmty. Affairs v. Burdine,
7 450 U.S. 248, 253 (1981) (plaintiff must prove "she applied for an available position for
8 which she was qualified, but was rejected under circumstances which give rise to an
9 inference of unlawful discrimination").

10    Plaintiff's Complaint alleges that Defendants proffered reason for not promoting
11 Plaintiff was that she was not the right fit for an Academic Trainer position. Defendants so
12 found after interviewing Plaintiff and 21 other applicants. During Plaintiff's interview,
13 Defendants inquired about Plaintiff's personality, specifically her ability to relate to new
14 employees. This was arguably a reasonable inquiry given the personal interactions
15 required of a trainer. These facts, if proven, arguably provide "a legitimate,
16 nondiscriminatory reason" for rejecting Plaintiff. See Id., at 254-56.

17    At this juncture, Plaintiff must "demonstrate that the proffered reason was not the
18 true reason for the employment decision." Id., at 256. Plaintiff has alleged facts that permit
19 the inference that Defendants' proffered reason for failing to promote Plaintiff- that she was
20 not the right fit- was not the true reason for the employment decision.

21    First, Plaintiff's employment history arguably justifies an inference that Defendants
22 did not promote Plaintiff based on animus against Plaintiff on the basis of her race and age.
23 Plaintiff alleges that she harassed by white managers, who subjected her to harsher
24 discipline and more frequent reprimands for performance and attendance than white
25 employees engaging in the same conduct. Plaintiff further alleges that she experienced
26 harassing and differential treatment related to her leave for a work-related injury. Plaintiff
27 alleges that she was subjected to monitoring of her telephone calls and frequent individual
28

meetings with her manager. Plaintiff further alleges that this conduct continued when she was assigned to a new manager in February 2004. Plaintiff alleges that she was not allowed to perform her duties as lead counselor, those duties being given to a newly hired employee.

Second, Plaintiff offers statistical evidence to allegedly demonstrate Defendants' animus against minorities and those over age 33. Plaintiff has alleged that no person of color over the age of 33 has been employed as an Academic Trainer. Plaintiff further alleges that only two persons of color under the age of 33 have held counseling management positions. Statistics may constitute circumstantial evidence of discrimination. Aragon v. Republic Silver State Disposal, 292 F.3d 654, 663 (9th Cir. 2002). [3]

Based on Plaintiff's financial resources, her efforts to obtain an attorney, and the merits of her claim, the Court will grant Plaintiff's Motion fo Appointment of Counsel pursuant to 42 U.S.C. § 2000e-5(f)(1)(B), subject to finding an attorney for Plaintiff. Because "Congress has never created a fund for payment of court-appointed counsel in Title VII cases," the Court will search the local legal community for an attorney to represent Plaintiff. Bradshaw v. United States Dist. Court for the S. Dist. of California, 742 F.2d 515 (9th Cir. 1984). The Court will inform the parties of the result of this search by further Court order.

**B.     Motion to Dismiss**

On June 10, 2005, Defendants answered Counts One and Two and filed a Motion to Dismiss Count Three and Defendant Phillips. [Dkt. 6]. Plaintiff has not filed a Response

---

[3] The probative value of Plaintiff's statistics is uncertain. The Ninth Circuit has instructed that "statistical evidence derived from an extremely small universe has little predictive value and must be disregarded." Aragon, 292 F.3d at 663 (no inference of discrimination where three of four workers fired were white) (quotation omitted). "Furthermore, the statistics must show a stark pattern of discrimination unexplainable on grounds other than race." Ibid (quotation omitted).

Here, neither the number of Academic Trainers nor the number of counseling management positions have been given, and thus the statistics are incomplete. Discovery may remedy this deficiency.

1 to the Motion to Dismiss. In addressing a Motion to Dismiss the claim of a Plaintiff who
2 has filed a Motion to Appoint Counsel, the Ninth Circuit has instructed that "the district
3 court should determine if counsel would aid its resolution before disposing of the case on
4 its merits." Johnson, 939 F.2d at 825. Here, counsel would not aid the resolution of the
5 Motion to Dismiss because, as discussed below, Count Three will not be dismissed and
6 whether to dismiss Defendant Phillips turns on established Ninth Circuit law.

### 1. Count Three: Intentional Infliction of Emotional Distress

8 Defendants argue that Plaintiff has not sufficiently alleged extreme and outrageous
9 conduct to support a claim for intentional infliction of emotional distress. Defendants cite
10 Mintz v. Bell Atlantic Systems Leasing Int'l., 183 Ariz. 550, 555, 905 P.2d 559, 564 (Ct. App.
11 1995), where the Court found as follows:

> Because of its legitimate business purpose, the bare fact that Bell Atlantic called Mintz back to work sooner than her doctor recommended or that Bell Atlantic hand delivered a letter to Mintz in the hospital cannot be regarded as "atrocious and utterly intolerable in a civilized community," even in light of Mintz's known susceptibility to emotional problems.

15 This case is distinct from Mintz because Plaintiff has alleged a pattern of
16 discrimination over the course of two years, which allegedly includes monitoring Plaintiff's
17 telephone calls, subjecting her to frequent meetings with her manager, reprimanding her
18 for infractions that were overlooked when committed by white employees, differential
19 treatment in Plaintiff's use of the leave policy, and allegedly culminating in failing to
20 promote Plaintiff on the basis of her race and age. See Coffin v. Safeway, 323 F. Supp. 2d
21 997, 1005-06 (D. Ariz. 2004) (the "Court encounters little difficulty distinguishing Mintz"
22 where plaintiff alleged verbal and physical sexual harassment over an eight-month period).
23 Plaintiff has sufficiently alleged a claim for intentional infliction of emotional distress.

### 2. Defendant Phillips

25 Plaintiff sues Defendant Phillips "individually and in her capacity as a manager"
26 with the University. [Dkt. 1, caption]. Under Title VII and the AEDA, Plaintiff cannot
27 maintain claims against Defendant Phillips in her individual capacity. The Ninth Circuit has

1  found in a Title VII case that "civil liability for employment discrimination does not extend
2  to individual agents of the employer who committed the violations, even if that agent is a
3  supervisory employee." Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1189 (9th Cir.
4  1998) (affirming dismissal of plaintiff's supervisor because supervisor could not be liable
5  under Title VII); Coffin, 323 F. Supp. 2d at 1002 ("an employee that is a supervisor cannot
6  be held liable under Title VII"). Nor can an employee be liable under the ADEA. Miller v.
7  Maxwell's Int'l., 991 F.2d 583 (9th Cir. 1993) ("because of the similarities in the Title VII and
8  the ADEA statutory schemes," employees cannot be liable under ADEA); Rohm v. Homer,
9  367 F. Supp. 2d 1278, 1284-85 (N.D. Cal. 2005) (dismissing supervisor and employee
10 because the statutory scheme of the ADEA "itself indicates that Congress did not intend
11 to impose individual liability on employees"). Because she cannot be individually liable
12 under Title VII and the AEDA, Defendant Phillips, in her individual capacity, will be
13 dismissed from Plaintiff's Title VII and ADEA claims.

14 Plaintiff has alleged that Defendant Phillips took part in the course of conduct
15 constituting intentional infliction of emotional distress; Defendant Phillips in her individual
16 capacity is a party to the claim for emotional distress. Defendant Phillips in her official
17 capacity is subject to all claims.

**C.    Other Motions**

19 Defendants filed a Request for Summary Disposition [dkt. 7] of the Motion to
20 Dismiss on the ground that Plaintiff failed to file a Response. Having reached the merits of
21 the Motion to Dismiss, the Request for Summary Disposition is moot.

22 Plaintiff filed a Motion for Extension of Time [dkt. 8] to file a Response to
23 Defendants' Answer and to Defendants' Request for Summary Disposition. Plaintiff is not
24 permitted to file a reply to Defendants' Answer. See Fed. R. Civ. P. 7(a) ("the court may
25 order a reply to an answer"). The Request for Summary Disposition is moot. Plaintiff's
26 Motion for Extension of Time will be denied as moot.

27 Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Appoint Counsel [dkt. 9] is **GRANTED**, subject to finding an attorney to represent Plaintiff.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [dkt. 6] is **GRANTED IN PART** and **DENIED IN PART**; Defendant Phillips in her individual capacity is dismissed from Counts One and Two of the Complaint.

**IT IS FURTHER ORDERED** that Defendants' Request for Summary Disposition [dkt. 7] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time [dkt. 8] is **DENIED** as moot.

DATED this 3rd day of March, 2006.

_____
Earl H. Carroll
United States District Judge